**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| MICHAEL KACMARIK, | ) | CASE NO: 1:15CV2062 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| STEWART MITCHELL, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | **MEMORANDUM OPINION &** |
| | ) | **ORDER** |

This matter has been referred to the undersigned to resolve the discovery disputes set forth in (1) the parties' emails to the Court dated January 5 and 6, 2017; and (2) the Motion of non-party Ohio Department of Rehabilitation and Correction ("ODRC") to Quash Subpoenas (Doc. No. 43). For the following reasons, ODRC's Motion to Quash is DENIED (Doc. No. 43). In addition, Defendants are ordered to produce certain previously redacted provisions of the Receiving & Discharge Post Order, as set forth below.

**I.    Background**

On October 6, 2015, Plaintiff Michael Kacmarik filed a Complaint in this Court against Defendants Stewart Mitchell, Jack Roe, and John/Jane Does 1-3. (Doc. No. 1.) Each of these defendants were sued in their individual and official capacities as employees of the Mansfield Correctional Institution. A First Amended Complaint was thereafter filed on January 22, 2016, in which Kacmarik alleges the following facts. (Doc. No. 14.)

At all relevant times, Kacmarik was an inmate at Mansfield Correctional Institution

(hereinafter "MANCI") in Richland, County, Ohio.[1] (Doc. No. 14 at ¶ 5.) His mobility has been "significantly restricted" due to a previous back surgery and his primary means of transport has been a wheelchair. (*Id*. at ¶ 9.) Kacmarik asserts Defendants knew about his "disability and serious medical need." (*Id*. at ¶ 11.)

On October 8, 2014, Kacmarik was in the Receiving and Delivery (R&D) area of MANCI waiting to be transferred to the Cuyahoga County Jail. (*Id*. at ¶ 13.) He was brought to the R&D area in a wheelchair. (*Id*. at ¶ 14.) Kacmarik was then transferred from the wheelchair to a chair in the hallway and told to sit there. (*Id*. at ¶ 15.) He was restrained by belly chains, handcuffs, and leg shackles. (*Id*. at ¶ 16.) He also had a cane between his legs, which he used to transfer to and from the wheelchair. (*Id*.)

Shortly thereafter, Defendant Corrections Officer Stewart Mitchell approached Kacmarik, told him he could not have his cane, and ordered him to walk to a holding cell. (*Id*. at ¶ 17.) Kacmarik told Mitchell he could not walk to the cell because he required a wheelchair to move. (*Id*.) In response, Defendant Mitchell allegedly took Kacmarik's cane, grabbed him by the shirt, jerked him out of his chair onto his feet, and threw him down on the ground. (*Id*. at ¶ 18-19.) Kacmarik landed on his back and struck his head on the floor. (*Id*. at ¶ 19.) Mitchell then allegedly dragged Kacmarik across the floor by his belly chain and left him in a cell. (*Id*. at ¶ 20-21.) Kacmarik alleges Mitchell left the cell to make a phone call, returned, stepped on him while he was laying on the floor, and dragged him further into the cell. (*Id*. at ¶ 21.) Supervisor Jack Roe was allegedly present at the time, witnessed the incident, and failed to intervene. (*Id*.

---

[1] Kacmarik alleges that, since the incident that forms the basis of this action, he was released from prison. (Doc. No. 14 at ¶ 5.)

2

at ¶ 24.) Three staff members also witnessed the incident (John/Jane Does 1-3) and none interceded. (*Id*. at ¶ 25.)

Afterwards, Mitchell wrote a "knowingly false incident report," stating Kacmarik had fallen. (*Id*. at ¶ 26.) Kacmarik filed a video with the Complaint, which he claims shows Mitchell's report is false. (*Id*. at ¶ 27.) The shift supervisor, Ltn. Reece, wrote a report indicating there was no security footage of the incident, which Kacmarik claims is false. (*Id*. at ¶ 28.) A video was apparently preserved and reviewed by the Deputy Warden, Warden, and a Use of Force Investigator. (*Id*. at ¶ 29.) They determined Mitchell's use of force was justified. (*Id*.)

The First Amended Complaint alleges five claims: (1) excessive force under 42 U.S.C. § 1983, as against Defendant Mitchell in his individual capacity only; (2) failure to prevent use of excessive force, as against Defendants Jack Roe and John Does 1-3 in their individual capacities only; (3) failure to provide medical care, as against all Defendants in their individual capacities only; (4) intentional discrimination in violation of Title II of the Americans with Disability Act, 42 U.S.C. § 12131, as against all Defendants in their official capacities only; and (5) discrimination on the basis of his handicap in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), as against all Defendants in their official capacities only. Kacmarik seeks compensatory and punitive damages, attorney fees and costs, and pre and post judgment interest.

Defendant Mitchell filed an Answer and Motion for Judgment on the Pleadings on February 5, 2016. (Doc. Nos. 18, 19.) In an Opinion & Order dated August 18, 2016, Defendant Mitchell's Motion for Judgment on the Pleadings was denied. (Doc. No. 26.)

On September 2, 2016, the Court adopted the parties' Joint Proposed Schedule, and set a non-expert discovery deadline of December 30, 2016, an expert discovery deadline of March 31,

2017, and a dispositive motions deadline of May 1, 2017. Several months later, upon joint motion of the parties, the Court entered a Stipulated Protective Order. (Doc. Nos. 30, 31.)

On January 5, 2017, the parties emailed the Court regarding a dispute concerning redactions to a document produced by Defendants in discovery.[2] On that same date, non-party ODRC filed a Motion to Quash Subpoena. (Doc. No. 43.) On January 6, 2017, both of these matters were referred to the undersigned for resolution. (Doc. No. 44.)

On January 9, 2017, this Court issued an Order requiring (1) Defendants to submit an unredacted copy of the document in question to the Court for *in camera* review by the end of the day; and (2) Plaintiff to submit a response to ODRC's Motion to Quash by January 10, 2017. (Doc. No. 45.) Defendants timely complied. On January 10, 2017, Plaintiff submitted a combined "Memorandum in Opposition to Motion to Quash and, in the alternative, Motion to Compel Defendant to Respond to Plaintiff's Request for Production of Documents and Memorandum in Support."[3] (Doc. No. 46.)

A telephone conference was conducted with counsel on January 11, 2017. (Doc. No. 47.) The Court offered counsel for all parties the opportunity for further argument regarding the pending disputes, which all counsel declined. The Court then announced its decision regarding the parties' submissions and indicated an Opinion & Order would be forthcoming. (*Id.*)

**II. Analysis**

---

[2] Defendants submitted an email in response on January 6, 2017.

[3] On the same date Plaintiff served his subpoena on ODRC, he also served a request for production of documents on Defendant Mitchell seeking the same documents. (Doc. No. 46 at 2.) In addition to responding to ODRC's Motion to Quash, Plaintiff also filed a motion to compel Defendant Mitchell to produce the same documents, in order to preserve the issue for review.

4

### A. Redacted Receiving & Discharge Post Order

Kacmarik's January 5, 2017 email to the Court relates to Defendants' production of a redacted copy of an internal MANCI policy known as the "Receiving & Discharge Area Post Order." Kacmarik requested this document in his Request for Production #7. Defendants objected on the grounds "Plaintiff is seeking security policies that are non-disclosable to either the public or inmates." Without waiving the objection, Defendants produced a heavily redacted copy of the 10 page Post Order.

Kacmarik asserts he needs an unredacted copy of this document to determine (1) what the proper staffing of the Receiving and Discharge area is; (2) what responsibilities those staff members have; (3) what level of force was proper for an officer, including an assigned officer, to use force on an inmate in the receiving and discharge area to move him to a cell; and(4) what alternatives were available to an officer in Receiving and Discharge to move an inmate, other than force.

Defendants argue Kacmarik's request should be denied because "there is no information whatsoever regarding the use of force or alternative methods of movement included anywhere in the post order." Defendants further maintain Kacmarik had ample opportunity to gain information regarding staffing and staff responsibilities during the numerous depositions of MANCI employees taken in December 2016. Finally, Defendants assert the highly confidential and sensitive nature of the information contained in this internal prison Post Order weighs against disclosure.

Pursuant to Rule 26(b)(1), parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case,

considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed R. Civ. P. 26(b) (1). This Rule explains that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id*. Rule 26 is to be liberally construed to permit broad discovery. *See Lewis v. ACB Bus. Serv., Inc*., 135 F.3d 389, 492 (6th Cir.1998). *See also Rui He v. Rom*, 2016 WL 5682012 at * 14 (N.D. Ohio Oct. 3, 2016) ("Rule 26 was amended in 2015 to including the 'proportionality' requirement. However, the 2015 amendments do not alter the basic tenet that Rule 26 is to be liberally construed to permit broad discovery." ); *State Farm Mutual Automobile Ins. Co. v. Warren Chiropractic & Rehab. Clinic, P.C.*, 315 F.R.D. 220, 222 (E.D. Mich. May 11, 2016) (same).

The Court has conducted an *in camera* review of the Receiving & Discharge Post Order. Upon careful consideration, the Court finds the majority of the redacted portions of this Order are not discoverable. Without disclosing any specific content, the Court finds that (with two limited exceptions, discussed below) the redacted provisions are not relevant to the issues raised in this case. Accordingly, and in light of the sensitive nature of the redacted provisions of the Post Order, the Court finds the balancing of interests required under Rule 26(b)(1) weighs heavily in Defendants' favor.

That being said, the Court does find that two sections of the Post Order might lead to the discovery of relevant information and, further, that any confidentiality concerns raised by the disclosure of these sections are adequately addressed by the Stipulated Protective Order entered in this matter on November 7, 2016.  Accordingly, by no later than January 25, 2017,

Defendants shall produce a copy of the Post Order that includes the previous redactions with the following exceptions: (1) Sections B.1, B.2, B.4, B.5, and B.6 on pages 9 - 10 (Bates Numbers 000246-000247); and (2) the entirety of Section VII. Responsibility Statement on page 10 (Bates Number 000247).  This document shall be subject to the terms and conditions of the parties' Stipulated Protective Order.  (Doc. No. 31.)

### B.     Motion to Quash

Non-party ODRC[4] requests the Court quash a subpoena issued to it by Kacmarik on December 22, 2016.  (Doc. No. 43.)  This subpoena orders ODRC to produce the following documents at Plaintiff's counsel office by January 5, 2017: (1) a floor plan of the Receiving and Discharge area of MANCI; (2) all powerpoint slides and handouts regarding the use of force used to train MANCI corrections officers from 2012 to 2014; (3) the color-coded continuum of use of force document referenced in the Alvin Nettles deposition; (4) various personnel files; and (5) a complete roster of all inmate porters on October 8, 2014.  (Doc. No. 46-1.)

In its motion, ODRC argues the subpoena should be quashed as untimely because discovery closed on December 30, 2016 and the subpoena seeks the production of documents after that date, on January 5, 2017.  ODRC also asserts the subpoena subjects it to undue burden. It complains it has "been greatly inconvenienced by Plaintiff's counsel's failure to abide by even the simplest of rules," citing Plaintiff's failure to properly issue subpoenas for the ODRC employee depositions that were eventually completed in December.  (Doc. No. 43 at 3.)  Finally, ODRC suggests the subpoena should be quashed because ODRC is located more than 100 miles

---

[4] Although not reflected on the docket, counsel for Defendants represented that she is also serving as counsel to non-party ODRC in this matter.

away from the designated place of production (i.e., Plaintiff's counsel's office) and, therefore, is in violation of the geographical limitation set forth in Fed. R. Civ. P. 45(c)(3)(A)(ii).

In response, Kacmarik argues the subpoena is proper under Rule 45's geographical limits because it is directed to the ODRC "which regularly conducts business at multiple locations within 100 miles of [Plaintiff's counsel's office], including the Warren Correctional Institution, Dayton Correctional Institution, Ross Correctional Institution, Chillicothe Correctional Institution, and Pickaway Correctional Institution." (Doc. No. 46 at 3.) Kacmarik further states that, to reduce the burden on ODRC, he will "stipulate and allow for the responsive documents to be served electronically or by U.S. mail." (*Id*.)

Kacmarik next argues the subpoena is timely because it was served before the fact discovery deadline and three months before the final discovery deadline. He also explains the subpoena was based on information learned in depositions conducted on December 13, 20, and 21, which were "the first depositions taken in this case due to Defense counsel's schedule." (*Id*. at 5.) Finally, Kacmarik argues the subpoena does not place an undue burden on ODRC because "replying to six requests for documents does not place an undue burden on a government agency that has regular systems in place not just for litigation but also for responding to public record requests." (*Id*. at 7.)

The scope of a subpoena issued under Fed. R. Civ. P. 45 is "subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1)." *Laethem Equip. Co. v. Deere and Co.*, 2007 WL 2873981 at *4 (E.D. Mich.2007) (internal quotation omitted). "That general relevancy standard is very broad ." *Cleveland Clinic Health System–East Region v. Innovative Placements, Inc*., 2012 WL 187979 at *2 (N.D. Ohio Jan.23, 2012) (quoting *Lewis v.*

*ACB Bus. Serv. Inc*., 135 F.3d 389, 402 (6th Cir. 1998).  Rule 45(d) does, however, provide circumstances under which a court must or may quash or modify a subpoena.  That Rule provides, in pertinent part, that "the court for which the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45; (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).  Rule 45(d)(3)(B) also further establishes that the court may quash or modify a subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information."  Fed. R. Civ. P. 45(d)(3).

The party issuing a subpoena must take reasonable steps to avoid imposing an undue burden on a person subject to a subpoena, but "the movant bears the burden of establishing that the issued subpoenas violate Rule 45 of the Federal Rules of Civil Procedure."  *Cleveland Clinic Health System–East Region*, 2012 WL 187979 at * 2 (quoting *Recycled Paper Greetings, Inc. v. Davis*, 2008 WL 440458 at * 3 (N.D. Ohio Feb.13, 2008)).  In evaluating a motion to quash a subpoena, the district court may consider "whether (i) the subpoena was issued primarily for purposes of harassment, (ii) there are other viable means to obtain the same evidence, and (iii) to what extent the information sought is relevant, nonprivileged, and crucial to the moving party's case."  *Id*. (quoting *Bogosian v. Woloohojian Realty Corp*., 323 F.3d 55, 66 (1st Cir. 2003)).  The decision of whether to quash a subpoena is within the sound discretion of the district court. *Thomas v. City of Cleveland*, 57 Fed. Appx. 652, 654 (6th Cir. 2003).  *See also Pitzer v. Cinmar*, LLC, 2016 WL 7325158 at *1 (N.D. Ohio Dec. 16, 2016).

For the following reasons, ODRC's Motion to Quash is denied.  As an initial matter, the

9

Court rejects ODRC's suggestion the subpoena should be quashed because it requires ODRC to comply beyond the geographic limits specified in Rule 45(c)(2); i.e., "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2) & 45(d)(3)(A)(ii). Although given the opportunity to do so during the January 11, 2017 telephone conference, counsel for ODRC did not challenge Kacmarik's argument that the subpoena complies with Rule 45(c)(2) because ODRC regularly conducts business at multiple locations within 100 miles of Plaintiff's counsel's office. Moreover, the Court finds this issue effectively moot in light of Kacmarik's stipulation that the subpoenaed documents may be produced electronically or by U.S. mail. *See United States v. Brown*, 2016 WL 6962741 at * 4 (N.D. Ohio Nov. 29, 2016) (noting "courts generally find that the [100 mile limit] rule does not apply where documents can be mailed and do not require personal appearance") (collecting cases).

More importantly, the Court finds ODRC has failed to demonstrate the subpoena is unduly burdensome. "In determining whether a subpoena imposes an undue burden, a court considers 'such factors as relevance, the need of the [requesting] party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *Hogan v. Cleveland Ave. Restaurant, Inc.*, 2016 WL 7467968 at * 2 (S.D. Ohio Dec. 28, 2016); *American Elec. Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999). *See also Vaughan v. City of Shaker Heights*, 2013 WL 4758028 at * 4 (N.D. Ohio Sept. 4, 2013); *Battle v. Chicago Cycle, Inc.*, 2012 WL 5500507 at * 5 (N.D. Ohio Nov.13, 2012). Here, ODRC makes no argument regarding any of the above factors. ODRC does not argue the requested documents are not relevant, nor does it assert the

subpoena is overbroad or that compliance would be unduly cumbersome or expensive.[5] Rather than addressing these issues, the ODRC instead complains about its frustrations with the scheduling of ODRC employee depositions in December 2016. These deposition scheduling issues, however, are unrelated and simply not relevant to whether the production of the requested documents poses an undue burden on ODRC. The Court therefore finds ODRC has failed to carry its burden of establishing that the subpoena violates Rule 45.

Finally, the Court rejects ODRC's argument that the subpoena should be quashed as untimely. Kacmarik served his subpoena prior to the close of fact discovery, and expert discovery is ongoing until March 2017 with dispositive motions not due until May 2017. ODRC has not demonstrated it would be prejudiced by requiring production of the subpoenaed documents under these circumstances. Moreover, the parties were aware there would be a flurry of activity in December 2016 and no objections were raised on that basis at the time.

Accordingly, and for all the reasons set forth above, ODRC's Motion to Quash (Doc. No. 43) is without merit and DENIED. Because the Motion to Quash is denied, Kacmarik's Motion to Compel (Doc. No. 46) Defendant Mitchell to produce the same documents is DENIED AS MOOT.

**III. Conclusion**

For the reasons set forth above, ODRC's Motion to Quash (Doc. No. 43) is DENIED. ODRC shall produce the subpoenaed documents to Plaintiff's counsel by no later than January 25, 2017. ODRC may produce the documents electronically or by U.S. mail. Because the

---

[5] ODRC does not argue in the instant motion that the subpoena should be quashed on the grounds it seeks privileged or other protected matter.

Motion to Quash is denied, Kacmarik's Motion to Compel (Doc. No. 46) Defendant Mitchell to produce the same documents is DENIED AS MOOT.

In addition, by no later than January 25, 2017, Defendants shall produce a copy of the Receiving & Discharge Post Order that includes the previous redactions with the following exceptions: (1) Sections B.1, B.2, B.4, B.5, and B.6 on pages 9 - 10 (Bates Numbers 000246-000247); and (2) the entirety of Section VII. Responsibility Statement on page 10 (Bates Number 000247).  This document shall be subject to the terms and conditions of the parties' Stipulated Protective Order. (Doc. No. 31.)

**IT IS SO ORDERED.**


Date: January 13, 2017                                       s/ *Jonathan D. Greenberg*
                                                            Jonathan D. Greenberg
                                                            U.S. Magistrate Judge