# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL KACMARIK, | ) | CASE NO.1:15CV2062 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| Vs. | ) | |
| | ) | |
| STEWART L. MITCHELL, | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on the Motion of Defendants Stewart Mitchell, Wayne Gillam, Joseph Soltesz and Gary Meyers to Dismiss or for Summary Judgment. (ECF # 71). For the following reasons, the Court grants, in part, and denies, in part, the Motion.

## I. Background Facts

According to his Second Amended Complaint, Plaintiff Michael Kacmarik ("Kacmarik") was an inmate of the Mansfield Correctional Institution ("Mansfield") in Richland County, Ohio but has subsequently been released. Years prior to the incident in question, Kacmarik had his lumbar spine surgically fused by placement of surgical screws and posterior stabilization rods in his back, significantly impairing his mobility. He alleges his

primary means of transport has been via wheelchair. At the time of the incident giving rise to this suit, Mansfield Correctional was aware of Kacmarik's disability.

On October 8, 2014, Kacmarik was in the Receiving and Delivery ("R & D") area of Mansfield awaiting transfer to Cuyahoga County jail. Kacmarik was transported to R & D via wheelchair. Upon arrival at R & D, Kacmarik was transferred from a wheelchair to a chair where he awaited transport in a hallway. Kacmarik was in belly chains, handcuffs and leg shackles and was holding a cane. Defendant Corrections Officer Stewart Mitchell ("Mitchell") approached Kacmarik and informed him he could not have a cane in R & D and ordered Kacmarik to walk to a holding cell. Kacmarik informed Mitchell he could not walk to the cell but needed a wheelchair to move. Rather than place Kacmarik in a nearby wheelchair for transfer to the holding cell, Mitchell took Kacmarik's cane, pulled him onto his feet and allegedly threw Kacmarik to the ground, causing Kacmarik to strike his head on the floor. Mitchell then grabbed Kacmarik's belly chain and dragged Kacmarik into the holding cell. Mitchell then allegedly went to make a phone call, came back to the holding cell where Kacmarik was left lying on the floor, stepped on Kacmarik and proceeded to drag him further into the cell. According to Kacmarik, he never struck, attempted to injure nor threatened Mitchell.

Kacmarik further alleges in his Second Amended Complaint that four staff members of Mansfield Correctional, Wayne Gillam ("Gillam"), Joseph Soltesz ("Soltesz"), Gary Myers ("Myers") and a Jane Doe ("Doe") witnessed the incident and failed to take any action to intervene. After the incident, Kacmarik contends Mitchell wrote a false incident report describing the cause of Kacmarik's injuries as related to a fall in the holding cell.

Plaintiff's Second Amended Complaint alleges claims for Excessive Force, Failure to Prevent Use of Excessive Force and Failure to Provide Medical Care/Deliberate Indifference in violation of Kacmarik's constitutional rights. Kacmarik also asserts a claim for violation of the Americans with Disabilities Act ("ADA") for Defendants' failure to accommodate Kacmarik's disability by failing to provide him with a wheelchair. Kacmarik further asserts a claim for violation of Section 504 of the Rehabilitation Act in their use of excessive force and/or failing to prevent the use of excessive force against him. Lastly, Kacmarik alleges Defendants' conduct was an assault and battery upon him in violation of Ohio law.

**II. Defendants' Motion**

Defendants tell a very different story than that recounted by Kacmarik. Defendants argue that Kacmarik was not confined to a wheelchair while incarcerated at Mansfield. Defendants dispute that Mitchell was even in R & D when Kacmarik was allegedly wheeled in on a wheelchair. Mitchell contends he was escorting a backhoe as part of his assignment as a special duty officer when Kacmarik was brought to R & D. Therefore, he never witnessed Kacmarik's use of a wheelchair and only saw Kacmarik sitting in a chair with a cane. The incident was captured on video yet no wheelchair was seen in the hallway until after Kacmarik is seen sitting with a cane in R & D.

According to Mitchell, Kacmarik refused to comply with Mitchell's order for Kacmarik to walk to a holding cell. Defendants contend prisoners are not permitted the use of a cane in R & D per prison policy as no state issued property may be taken from the facility except for the inmate's clothing. Furthermore, there is a danger of an inmate using it as a weapon. Instead, Mitchell pulled Kacmarik from the chair to assist him to the holding cell by

3

supporting Kacmarik's left arm and placing Mitchell's right arm around Kacmarik's back. Kacmarik walked a few steps and fell. Kacmarik fell near an exit door which, according to Defendants, posed a security issue. Mitchell determined that he had to move Kacmarik to the holding cell but rather than risk picking him up only to have him fall again he simply dragged Kacmarik a few feet into the holding cell and called for medical assistance. When a nurse came to examine Kacmarik, he refused to let her examine him and was verbally abusive. There were no apparent injuries to Kacmarik that the nurse was able to observe nor has Kacmarik produced any evidence of any substantial injury.

Defendants contend that Kacmarik had no medical restriction card required by Mansfield Correctional that would have permitted him to use a wheelchair, cane or walker during transport. As of the date of the incident, there was no medical evidence demonstrating that Kacmarik required the use of a wheelchair. In fact, the medical evidence at that time demonstrated he could walk and there was no medical reason for his inability to walk. Lastly, Mansfield Correctional is not equipped to handle wheelchair bound inmates and any inmate requiring a wheelchair is transferred to a different facility capable of housing them.

Because both Plaintiff and Defendants rely on evidence outside the pleadings, Fed. R. Civ. P. 12(d) requires that the Court treat the Motion as a Motion for Summary Judgment and requires that the Court provide all parties "a reasonable opportunity to present all the material that is pertinent to the motion." Here, discovery has already been completed and no party has asked for additional discovery in order to present their motion or opposition. Therefore, the Court will address Defendants' Motion as a Motion for Summary Judgment as all parties have been offered the reasonable opportunity to present their arguments.

## LAW AND ANALYSIS

### Standard of Review

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to show that no genuine issue of material fact exists, which may be demonstrated by "portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Inferences drawn "from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The court does not have the duty to search the entire record to establish that no genuine dispute as to any material fact exists. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (1989). The non-moving party must present affirmative evidence supporting a genuine dispute of fact in order to defeat a motion for summary judgment. *Id.* at 1479. If the non-moving party fails to establish the existence of an essential element of which it has the burden of proof at trial, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322-23. "[T]he inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

### Cruel and Unusual Punishment

"The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S.

5

825, 832 (1994) *Helling v. McKinney* 509 U.S. 25, 31, (1993). "The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 quoting *Hudson v. Palmer,* 468 U.S. 517, 526–527 (1984). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992)

"Under the Fourteenth, Fourth, or Eighth Amendments, assaults on subdued, restrained and nonresisting detainees, arrestees, or convicted prisoners are impermissible." *Coley v. Lucas Cty., Ohio,* 799 F.3d 530, 540 (6th Cir. 2015). Defendant violates the Eighth Amendment if its "offending conduct reflects an unnecessary and wanton infliction of pain." *Pelfrey v. Chambers,* 43 F.3d 1034, 1037 (6th Cir.1995). "To make out a claim under the Eighth Amendment, the prisoner must satisfy both an objective and a subjective component." *Williams v. Curtin,* 631 F.3d 380, 383 (6th Cir. 2011). See, e.g., *Moore v. Holbrook,* 2 F.3d 697, 700 (6th Cir.1993). "The subjective component focuses on the state of mind of the prison officials. The relevant inquiry is 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' " *Williams,* 631 F.3d at 383 quoting *Hudson v. McMillian,* 503 U.S. 1, 6, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (internal quotation marks omitted).

Courts may consider "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley,*

475 U.S. at 321, 106 S.Ct. 1078. Courts may also consider the circumstances "as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." *Id.*

> The objective component requires the pain inflicted to be "sufficiently serious." *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). This is a "contextual" inquiry that is "responsive to contemporary standards of decency." *Hudson,* 503 U.S. at 8–9, 112 S.Ct. 995 (internal citation and quotation marks omitted). The seriousness of the injuries are not dispositive; as the Supreme Court has held, "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated ... whether or not significant injury is evident." *Id.* at 9, 112 S.Ct. 995; *see also Wilkins v. Gaddy,* 559 U.S. 34, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995 (2010) (per curiam).

*Williams,* 631 F.3d at 383.

Kacmarik's Second Amended Complaint alleges several acts of excessive force/cruel and unusual punishment that he suffered on October 8, 2014. First, he alleges Mitchell forced him to walk even when Mitchell knew Kacmarik needed a wheelchair to move. Kacmarik also alleges Mitchell picked him up and threw him to the ground causing Kacmarik to strike his back and head on the ground. Mitchell then allegedly dragged Kacmarik across the floor to the holding cell by Kacmarik's arm, causing Kacmarik serious pain. Once in the holding cell Mitchell left and returned and stepped on Kacmarik. All this occurred while Kacmarik;s arms and legs were in restraints. These representations are all supported by Kacmarik's deposition testimony.

Kacmarik further alleges Eighth Amendment claims against Defendants Wayne Gillam ("Gillam"), Joe Soltesz ("Soltesz"), Gary Meyers ("Meyers") and Jane Doe for failing to prevent Mitchell from exerting cruel and unusual punishment on Kacmarik. Kacmarik alleges all Defendants failed to provide medical care or were deliberately indifferent to his

7

medical needs in violation of his Eighth Amendment rights.

The parties dispute whether Kacmarik came to R & D in a wheelchair, however, even if he did, Mitchell asserts he was not present to see Kacmarik in a wheelchair but only arrived in R & D once Kacmarik was seated in a chair holding a cane. Defendants' deposition testimony describes that Kacmarik had no medical restrictions upon his discharge from the infirmary on October 3, 2014, other than a lower bunk and a cane restriction. On October 8, 2014, Kacmarik was transferred from segregation to R & D. He was restrained in side cuffs which are used only for inmates who walk with a cane or for visitation. Had Kacmarik been transferred via wheelchair he would not have been secured with side cuffs. Furthermore, Defendants testify that to their knowledge, no inmate in segregation has ever used a wheelchair. Despite Kacmarik's demands, Dr. Araldi, the prison physician, did not authorize Kacmarik to use a wheelchair. Dr. Araldi observed Kacmarik walking and prescribed for him the use of a cane based on the medical staff's determination that Kacmarik could walk with a cane. Furthermore, Post Order 3A.023 for R & D requires corrections officers confiscate all state issued property from inmates prior to transfer. This included Kacmarik's cane. When Kacmarik was instructed by Mitchell to go to a holding cell for processing, Kacmarik refused, contending he could not walk. Mitchell took the cane per the requirements of the Post Order and Kacmarik's refusal to comply with an order as it could be used as a weapon. Mitchell decided to walk Kacmarik to the holding cell with Mitchell's assistance. This provided greater support for Kacmarik and safety for Mitchell. Kacmarik walked a few steps then pulled away from Mitchell and fell to the floor near an exit door creating a security issue. Determining that any attempt to pull Kacmarik to his feet would only subject him to the risk

8

of another fall, Mitchell dragged Kacmarik by the arm to the holding cell.  Once Kacmarik was placed inside the holding cell, Mitchell called for medical assistance.  Nurses arrived shortly thereafter, but Kacmarik refused to let them examine him and became verbally abusive to them.

The Court has previously concluded that Plaintiff's excessive force/cruel and unusual punishment claim based on Mitchell allegedly pulling Kacmarik to his feet and throwing him to the ground was not supported by the video evidence.  The video does not show Mitchell throwing Kacmarik to the ground as Mitchell's arms never extend in a push, his body does not twist in a throw nor do his feet entangle with Kacmarik's.  The video shows Kacmarik take a few steps then fall to the floor as he slips from Mitchell's grasp.  Furthermore, the Court finds it was reasonable for Mitchell to pull Kacmarik to his feet as Kacmarik could walk with a cane, had no medical restriction for use of a wheelchair, Dr. Araldi personally observed Kacmarik walk unassisted and prescribed Kacmarik a cane to use.  Based on this evidence, the Court grants summary judgment for Mitchell on Kacmarik's claim of cruel and unusual punishment for pulling him to his feet and throwing him to the floor.

However, based on the foregoing sworn testimony, the Court finds genuine issues of fact preclude summary judgment for Mitchell on Kacmarik's Eighth Amendment claims that Mitchell dragged him down the hall and stepped on him while in the cell.   While a much closer call, given the condition of Kacmarik as relates to his back, he claims Mitchell's dragging him to the cell by one hand extended over his head, while he was already in terrible pain from the fall, constituted cruel and unusual punishment.  Defendants argue there was no cruel and unusual punishment as evidenced by Kacmarik's apparent lack of any discernible

9

injury. However, the United States Supreme Court has held that the existence of a discernible injury is not determinative of a violation of an Eighth Amendment right. See *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010. ("The Court today appropriately puts to rest a seriously misguided view that pain inflicted by an excessive use of force is actionable under the Eighth Amendment only when coupled with 'significant injury,' *e.g.,* injury that requires medical attention or leaves permanent marks"). Furthermore, whether Mitchell arbitrarily stepped on Kacmarik while in the cell with the sole purpose of inflicting pain upon him is an issue of fact for the jury.

Neither is Mitchell entitled to qualified immunity for dragging and stepping on a restrained Kacmarik. "A defendant is entitled to qualified immunity on summary judgment unless the evidence, viewed in the light most favorable to the plaintiff, 'would permit a reasonable juror to find that (1) the defendant violated a constitutional right; and (2) the right was clearly established.' " *Coble v. City of White House, Tenn.,* 634 F.3d 865, 870 (6th Cir.2011). Mitchell is undeniably a state actor and dragging an injured prisoner or stepping on a restrained prisoner may be a deliberate act of punishment in violation of Kacmarik's constitutional rights (See *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1441 (11th Cir. 1985) and *Cole v. City of Dearborn*, 448 F. App'x 571, 575 (6th Cir. 2011). Therefore, the reasonableness of Mitchell's actions are an issue for the jury and Defendants' Motion for Summary Judgment on these claims is denied.

**Failure to Protect/Intervene**

According to Kacmarik, Defendants Gillam, Soltesz, Myers and Jane Doe had the opportunity to intervene and protect Kacmarik from Mitchell's excessive force. The Court

having already determined that assisting Kacmarik to the holding cell was not excessive force/cruel or unusual punishment finds there was no constitutional claims against these Defendants arising from those acts as Mitchell did not throw Kacmarik to the ground. While the Court has determined that a violation of Kacmarik's constitutional rights may have occurred when Mitchell dragged Kacmarik into a cell and stepped on him, a review of the video evidence shows that from the time of his fall to his being dragged into the cell by Mitchell a total of six to seven seconds elapsed.

In order for nearby defendants to be liable for failing to intervene or protect a prisoner, the Sixth Circuit has held "Plaintiffs must show that these defendants 'observed or had reason to know that excessive force would be or was being used' *and* "'had both the opportunity and the means to prevent the harm from occurring.'" *Burgess v. Fischer,* 735 F.3d 462, 475 (6th Cir. 2013) *quoting Turner v. Scott,* 119 F.3d 425, 429 (6th Cir.1997). Here, the Court finds that under applicable Sixth Circuit law, the six to seven second interval of time was insufficient time for Defendants to intervene. See *Ontha v. Rutherford Cnty., Tenn.,* 222 Fed.Appx. 498, 506 (6th Cir.2007) (finding that six or seven seconds was insufficient time to compel intervention). Having failed to meet his burden, the Court grants summary judgment for Defendants on Plaintiff's failure to intervene/protect claim.

**<u>Deliberate Indifference</u>**

The Eighth Amendment's cruel and unusual punishment clause obligates the government to provide medical care for individuals punished by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "Treatment of a prisoner violates the Eighth Amendment when it constitutes 'deliberate indifference to [the] prisoner's serious illness or injury.'" *Id.* at

11

104-05. In the context of a deliberate indifference claim, the "objective aspect requires proof of a "sufficiently serious" medical need. *Id*. To meet the subjective burden, a plaintiff must demonstrate that the official being sued (1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk. *Jones* v. Muskegon Cty., 625 F.3d 935, 941 (6th Cir. 2010) citing *Farmer*, 511 U.S. at 837. "Deliberate indifference" means more than mere negligence, but less than acting purposefully or with knowledge that harm will result. *Farmer*, 511 U.S. at 835.

  Kacmarik alleges Defendants failed to provide him medical care in violation of his Eighth Amendment right. Kacmarik alleges Defendants were deliberately indifferent to his claim that he could not walk and needed a wheelchair to be moved to the holding cell, however, Kacmarik fails to offer any medical evidence to support his claim. Defendants offer the deposition evidence of Defendants, including Dr. Araldi's wherein Dr. Araldi testifies he examined Kacmarik and determined he could walk. Defendants describe Dr. Araldi's personal observation of Kacmarik and the observations of prison staff that Kacmarik frequently walked with and without the aid of a cane. (Araldi at 14-15). Araldi admitted Kacmarik to the prison infirmary in August of 2014 and observed him walking slow but steady. *(Id* at 15). Dr. Araldi encouraged Kacmarik to walk. *(Id* at 16). Officers doing the rounds would observe Kacmarik walking when Dr. Araldi was not present. Dr. Araldi also observed Kacmarik walk several times in his cell. Dr. Araldi believed Kacmarik exaggerated his inability to walk because Kacmarik would walk often even though he told the doctor he could not. *(Id* at 17-18). Dr. Araldi requested that Kacmarik provide him with medical

12

records from the hospital that performed one of his back surgeries but Kacmarik failed to provide those to Dr. Araldi. Officer Nettles, an officer in the infirmary during Kacmarik's time at Mansfield, testified on deposition that prisoner disabilities are accommodated by means of a doctor order. A prisoner with a disability required a doctor to authorize the use of a wheelchair, cane, walker or limit standing or walking. (Nettles at 14). Nettles observed Kacmarik use a walker, but would pick up the walker and walk five to ten steps before setting it down again. *(Id* at 25). Officer Gertman testified on deposition that Kacmarik was not medically authorized to have a wheelchair. (Gertman at 41). Gertman also observed Kacmarik walk. *(Id* at 44-5). Nurse Hensley testified that Kacmarik's treatment plan was to progress him from a walker to a cane and that Kacmarik made progress during his time in the infirmary. (Hensley at 37). If the medical staff cannot get prisoners to progress, they reclassify them and have them transferred to another facility able to accommodate their disability. (*Id.*at 38). Hensley testified Kacmarik could walk down hallways with an assistive device. (*Id* at 40-41). Hensley testified that a standby assist from a person is the equivalent of using an assistive device like a walker or cane. (*Id* at 41.) Hensley recalled Kacmarik walking up and down the hall for more than 50 feet with a walker. (*Id* at 49).

In response, Kacmarik contends he was subsequently diagnosed with multiple sclerosis, demonstrating he had an objectively serious medical condition producing his inability to walk. When he informed Mitchell he could not walk to the holding cell, Mitchell forced him to his feet and threw him to the floor and then dragged him to the holding cell. Kacmarik further alleges Defendants Gillam, Soltesz and Myers were deliberately indifferent to his medical needs when they failed to intervene and stop Mitchell from pulling him to his

13

feet, throwing him to the ground and dragging him to his cell.

In light of the above, the Court finds Mitchell was not deliberately indifferent to Kacmarik's medical needs when he pulled Kacmarik to his feet and assisted him to the cell. It is undisputed that Kacmarik was not medically authorized to have a wheelchair at Mansfield. Dr. Araldi did give him a cane, but at transport, it is undisputed that prisoners are not permitted to leave with state property, especially a cane, as it can be used as a weapon. (Eddy at 119-120). Nurse Hensley testified an officer using standby assist is the physical equivalent of using an assistive device. Therefore, even if Kacmarik needed a cane to walk to the holding cell, Mitchell's providing standby assist in helping Kacmarik to the cell does not evidence deliberate indifference to Kacmarik's medical condition. However, once Kacmarik fell to the floor, there is a genuine issue of fact whether dragging him by the arm into the cell did in fact constitute deliberate indifference. Therefore, the Court grants summary judgment in part for Mitchell on his pulling Kacmarik to his feet and assisting him to the cell. The Court denies summary judgment for Mitchell for deliberate indifference insofar as his dragging Kacmarik to his cell.

Having already determined that under applicable Sixth Circuit precedent six to seven seconds is an insufficient time interval to hold bystanding officers and personnel liable for failure to intervene, Kacmarik's claim against these same defendants for deliberate indifference fails, as there is no evidence they could have acted timely to prevent Mitchell's allegedly indifferent conduct.

Kacmarik alleges that Nurse Hensley failed to treat or assess him after Mitchell dragged and stepped on him. The Court finds Kacmarik never alleged any claims against

14

Hensley in his Second Amended Complaint but only raised these allegations in his opposition brief. Furthermore, even if this Court were to find Kacmarik states a colorable claim against her, Kacmarik testified he did not want the nurses to come in to the holding cell to examine him after his alleged injuries. (Kacmarik at 20). Kacmarik testified " I wouldn't let them two nurses touch me or my dog if I had a dog." (Kacmarik at 21-22). Hensley testified Kacmarik was yelling obscenities at her and kicking at her, placing her and another nurse at risk. (Hensley at 20-21). Thus, Kacmarik cannot establish any genuine issue of fact that Hensley was deliberately indifferent to his medical care as Kacmarik's own conduct prohibited Hensley from examining and treating him. Therefore, the Court grants summary judgment for Hensley on Kacmarik's deliberate indifference claim

**Americans with Disabilities Act and Rehabilitation Act**

According to Kacmarik, Defendants violated the Americans with Disabilities Act (ADA") and the Rehabilitation Act ("RA") by failing to accommodate his disability by providing him a wheelchair. "Generally speaking, because both the RA and the ADA prohibit discrimination on the basis of disability, the jurisprudence regarding both statutory schemes has developed in tandem, and the claims are frequently considered as coextensive with each other." *Meeks v. Schofield*, 10 F. Supp. 3d 774, 798 (M.D. Tenn. 2014), *See, e.g., Thompson v. Williamson Cnty.,* 219 F.3d 555, 557 (6th Cir.2000) (given the similarity between the ADA and the RA, claims brought under both statutes can be analyzed together); *Andrews v. Ohio,* 104 F.3d 803, 807 (6th Cir.1997) ("Because the standards under both of the acts are largely the same, cases construing one statute are instructive in construing the other.").

Here, although Kacmarik may establish he suffered from a disability, he has failed to produce any evidence contrary to Defendants' medical evidence that he could walk with assistance. Dr. Araldi observed Kacmarik and determined he could walk with assistance and noted Kacmarik made progress while walking with assistance. While Kacmarik may dispute Dr. Araldi's diagnosis and treatment plan, this sounds more in the nature of a tort claim and will not support an ADA or Rehabilitation Act claim. In the absence of any medical evidence to the contrary, the Court finds Defendants are entitled to summary judgment on Kacmarik's ADA and Rehabilitation Act claims.

Finally, Defendants did not move for summary judgment on Kacmarik's state law assault and battery claim until their Reply brief. The Court finds this is improper and denies summary judgment for Defendants on this basis. "The court sees no reason to depart from the well-settled rule that 'this court will not consider arguments that are raised for the first time in a reply brief.'" *Int'l-Matex Tank Terminals-Illinois v. Chem. Bank*, No. 1:08-CV-1200, 2009 WL 1651291, at *2 (W.D. Mich. June 11, 2009) *quoting Appalachian Railcar Servs., Inc. v. Boatright Enters., Inc.,* 602 F.Supp.2d 829,-n. 24, 2008 WL 828112, *37 n. 24 (W.D.Mich.2008) (Maloney, J.) See also *Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 553 (6th Cir.2008). However, the Court may revisit this issue before trial.

Therefore, for the foregoing reasons, the Court grants, in part, and denies in part summary judgment for Defendant Mitchell on Kacmarik's Eighth Amendment excessive force claim, grants, in part, and denies, in part, summary judgment for Mitchell on Kacmarik's deliberate indifference claim, grants summary judgment for Mitchell on Kacmarik's ADA and Rehabilitation claims and denies summary judgment for Mitchell on

16

Kacmarik's assault and battery claim subject to revisiting before trial.

The Court grants summary judgment for Defendants Gillam, Soltesz, Myers and Doe on Kacmarik's failure to prevent excessive force claim, failure to provide medical care/deliberate indifference claim and ADA and Rehabilitation Act claims.

IT IS SO ORDERED.


 /s/Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge